**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

<u>**NOT FOR PUBLICATION**</u>

James L. Roudabush, Jr.          :
                                 :
          Plaintiff,             :     CIV. ACTION NO. 15-3185(RMB)
                                 :
     v.                          :
                                 :              OPINION
Lt. Bittinger et al.,            :
                                 :
               Defendants.       :
_____

**RENÉE MARIE BUMB**, U.S. District Judge

**I.    BACKGROUND**

On June 12, 2015, this Court terminated Plaintiff's civil rights action because he failed to submit a certified prisoner trust account statement with his application to proceed without prepayment of fees (<u>in</u> <u>forma</u> <u>pauperis</u> or "IFP" application). (Order, ECF No. 7.) Plaintiff was instructed that if he sought to reopen this case by correcting the deficiency in his IFP application, he should address whether he could be afforded IFP

1

status under the three strikes provision of the Prisoner Litigation Reform Act ("PLRA"). 28 U.S.C. § 1915(g).

## II.  IFP APPLICATION

Plaintiff filed a new IFP application on July 1, 2015, together with an affidavit explaining that his requests for a certified copy of his prison trust account statement were repeatedly refused by prison staff. (ECF No. 8.) Plaintiff also alleged that he is eligible for IFP status despite the three strikes provision of the PLRA because his complaint states that his life is in danger. (ECF No. 8 at 6.)

Alternatively, Plaintiff asserted that he does not have three strikes. He contended that Civil Action No. 11cv980, in the District of New Jersey, should only count as one strike under 28 U.S.C. § 1915(g) because the appeal was dismissed for failure to prosecute. (Id.) Plaintiff also asserted that Civil Action No. 05cv691, in the Western District of Virginia, was a habeas action, not a civil rights complaint. (Id.) Accordingly, he concluded that he does not have three strikes.

The Court, however, finds that Plaintiff has three strikes under the PLRA. One strike occurred in Civil Action No. 11cv980,

where this Court dismissed all defendants for failure to state a claim upon which relief may be granted. (<u>See</u> ECF No. 7 at 3.) Another strike occurred in Civil Action No. 11cv7444(RMB) when this Court dismissed the complaint on August 16, 2012. (<u>Id.</u>); <u>see</u> <u>Hagan v. Rogers</u>, 570 F.3d 146, 151 (3d Cir. 2009) ("dismissal with leave to amend will be treated as a final order if the Plaintiff has elected to stand upon the original complaint") (quoting <u>Frederico v. Home Depot</u>, 507 F.3d 188, 192 (3d Cir. 2007)).

Plaintiff also received a strike in Civil Action No. 12-29 (NLH), 2012 WL 4033725, (D.N.J. Sept. 12, 2012) when the court dismissed the complaint for failure to state a claim.[1] Finally, although Plaintiff filed Civil Action No. 05-691 as a habeas petition in the Western District of Virginia, the court determined that the case was properly construed as an action under 28 U.S.C. § 1983, and dismissed the complaint for failure to state a claim. <u>Roudabush v. Johnson</u>, No. Civ. A. 705CV00691, 2006 WL 270020 (W.D. Va. Feb. 3, 2006).

---

[1] Plaintiff's appeal was dismissed for lack of prosecution on September 11, 2013. (3d Cir. 12-3855).

A prisoner with three strikes may proceed in forma pauperis when he alleges that he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). When the allegations in Plaintiff's Complaint regarding his age, history of blood pressure problems, chest and left arm pain, and his episode of passing out on February 21, 2015, are accepted as true at this stage of the litigation, Plaintiff has sufficiently pled that he is in imminent danger of serious physical injury because he had not received medical evaluation at the time of filing the complaint.

The Court will, therefore, grant Plaintiff's IFP application despite his three strikes, and despite his inability to obtain a certified copy of his prison trust account statement after making multiple requests. Prison officials will begin to deduct partial payments of the filing fee, until it is paid, from Plaintiff's prison trust account, in accordance with 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of this proceeding.

Defendants have not yet been served with a summons and complaint. They have not, therefore, had an opportunity to challenge Plaintiff's claim of imminent danger of serious physical injury. "If the defendant, after service, challenges the allegations of imminent danger, the district court must then

determine whether the plaintiff's allegation of imminent danger is credible . . . ." Gibbs v. Roman, 116 F.3d 83, 86 (3d Cir. 1997) (reversed on other grounds). "In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions, or, alternatively, may hold a hearing." Id.

A PACER[2] search reveals that Plaintiff has had ninety federal district court cases since the 1980s, and approximately thirty appeals. Plaintiff filed four new civil rights actions in this Court after filing the present case.[3] In one of those cases, Roudabush v. McKool, 15cv4233(RMB) (D.N.J.), Plaintiff alleged extremely similar facts to those alleged in the present complaint, although against different defendants and occurring approximately nine months earlier. In both cases, Plaintiff alleged he suffered

---

[2] PACER [Public Access to Court Electronic Records] is available at https://www.pacer.gov/findcase.html
[3] See Roudabush v. McKool, 15cv4233(RMB) (D.N.J. June 9, 2015); Roudabush v. Dynan, 15cv4234(RMB) (D.N.J. June 9, 2015); Roudabush v. Reyes, 15cv5521(RMB) (D.N.J. July 9, 2015); In re James Lester Roudabush, 15-5550(RMB) (D.N.J. July 15, 2015). Although the latter case is labeled as a "Petition for Writ of Prohibition" it appears to be a Bivens action for injunctive relief enjoining defendants from interfering with Roudabush's hunger strike.

chest and arm pain after an officer refused to allow him to attend church services, and Plaintiff passed out in segregation later that day, all the while being denied medical attention.

In a more recent filing,[4] in a complaint which is entitled "Complaint for Imminent Serious Injury/Death," Plaintiff alleged he was in segregation again, and he was being denied adequate medical attention for his high blood pressure and episodes of passing out, which put his life in danger.

If Defendants challenge Plaintiff's allegation in the present complaint of imminent danger of serious physical injury, they should submit a response, within ten days of entry of this Order, including such affidavits and supporting documentation. Supporting documentation includes, but is not limited to, any medical records showing Plaintiff has been evaluated for the episodes of passing out and chest and arm pain, as alleged in the Complaint. The Court will then schedule and hold a hearing, by videoconference, to make a credibility determination of Plaintiff's claim of imminent

---

[4] See Roudabush v. Reyes, 15cv5521(RMB) (D.N.J. July 9, 2015).

danger. If the Court finds Plaintiff's claim is not credible, this Court will vacate the Order granting Plaintiff's IFP application.

Given Plaintiff's three strikes, his litigious history, and the likelihood that Plaintiff will continue to allege his high blood pressure places him in imminent danger of serious physical injury, the Court intends to proceed on future _in forma pauperis_ applications by Plaintiff in a similar manner, but the Court will likely make future credibility findings, if necessary, based on the written submissions of the parties, without holding a hearing.

**III. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A.**

At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit.

Plaintiff, a federal prisoner confined at FCI-Fort Dix, brings his constitutional claims under _Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics_, 403 U.S. 388 (1971) (holding Fourth Amendment violation by a federal agent acting under color of his authority gives rise to a cause of action for damages); _but_

see <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009) ("[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend <u>Bivens</u> liability 'to any new context or new category of defendants.'" (quoting <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001)).

There are eleven defendants named in the Complaint. (Compl, ECF No. 1 at 1.) Plaintiff alleged the following, accepted as true for the purpose of this screening only. In January 2015, all defendants met and conspired, orchestrated by Lieutenant Bittinger, to lock Plaintiff in isolation as retaliation for sending written complaints to the warden about C.O. Koeppen, C.O. Ferme and C.O. Grant. (<u>Id.</u> at 2.)

On February 21, 2015, at approximately 12:40 p.m., Plaintiff asked C.O. T. Jones ("Jones") if he could go to church services, and Jones said no. (<u>Id.</u>) Plaintiff asked Jones to call for medical attention because Plaintiff was having left-sided chest, neck, and arm pain and headache, and Jones refused. (<u>Id.</u>) Plaintiff asked to see a lieutenant, and Jones refused. (<u>Id.</u>) Jones then wrote a false disciplinary report against Plaintiff, containing two charges. (<u>Id.</u> at 3.) The report was based on retaliation and racial discrimination. (<u>Id.</u>)

8

Jones, who is black, asked a black inmate to mop the floor, and he refused. (Id.) Jones did not write a disciplinary report against the black inmate. (Id.) Plaintiff stated, "[t]he write-up was for not mopping the floor –not my job- another inmate's job that was doing it." (Id. at 5.)

Jones took Plaintiff to Lieutenant Marchanello's office and questioned Plaintiff about his citizenship status and about "political dissent comments on my outgoing mail envelopes." (Id. at 3-4.) Marchanello spoke to Plaintiff solely about his citizenship status and his writings on envelopes. (Id. at 4.) Lieutenant Marchanello ordered Lieutenant "John Doe" and C.O. Miletto to search Plaintiff's locker. (Id.) Lieutenant "Doe" and Lieutenant Miletto searched Plaintiff's locker and seized his legal papers and other property, stating he could not have these things because he sued a federal judge. (Id.) "Then they placed me in isolation." (Id.)

Plaintiff alleged "[i]nmates are not placed in isolation Pre-hearing for a Category 3 Write-up, and Jones and Lt. Bittinger ordered it anyway." (Id. at 5.) Additionally, "inmates' lockers are not searched for a Category 3 charge unless connected to the write-up." (Id.) Plaintiff's write-up was for not mopping the

9

floor, which was not his job. (Id.) The write-up was an excuse to get Plaintiff's legal papers from his locker, and then they used the excuse of Plaintiff suing a federal judge to lock him up. (Id.)

Plaintiff asked C.O. Sanchez, C.O. Ferme, C.O. Miletto and Lieutenant "John Doe" for medical attention between 12:40 p.m. and 11:59 p.m. on February 21, 2015, but he was not provided medical attention for three days as of the time he wrote the Complaint. (Id. at 6.) Plaintiff is 66-years-old and has a history of blood pressure problems. (Id.)[5]

At 9:00 p.m. on February 21, 2015, Plaintiff passed out in his cell, and Lieutenant Lampey left him lying there without calling for medical attention. (Id.) Physician Assistant Altieri refused to check Plaintiff, stating there was nothing wrong with him. (Id.) Lieutenants Bittinger and Marchanello instructed Altieri not to see Plaintiff, in retaliation for his lawsuits against Fort Dix staff. (Id.) Lampey and others made jokes about

---

[5] Plaintiff asserted he is suffering Elder Abuse in violation of state and federal law, but he did not identify any specific laws. (ECF No. 8 at 6.) If Plaintiff wishes to bring a specific claim for violation of a state or federal law, other than the constitutional claims he asserted here, he should file an amended complaint and identify the laws that were violated.

Plaintiff dying. (Id. at 7.) On February 24, 2015, Plaintiff notified the assistant warden, a nurse, and a U.S. Public Health Service Worker that he still had not received medical treatment. (Id.)

Plaintiff alleged violation of his First, Eighth, Sixth, Ninth and Fourteenth Amendment rights. (Id. at 7.)[6] Plaintiff seeks money damages, and injunctive relief regarding protection of his legal work, release from isolation, ordering medical treatment for all requesting inmates, and ordering Defendants to allow inmates to go to church. (Id. at 8.)

### A.   STANDARD FOR SUA SPONTE DISMISSAL

Plaintiff is proceeding in forma pauperis in this civil action. Therefore, this Court must review the complaint and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant

---

[6] Plaintiff also asserted that certain of defendants' actions violated Federal Bureau of Prison regulations, but he did not identify the specific regulations that were violated. (ECF No. 1 at 2-4.)

to 28 U.S.C. § 1915(e)(2)(B). The Court must liberally construe the complaint in Plaintiff's favor because he is proceeding pro se. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). The Court must also "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

In Ashcroft v. Iqbal, the Supreme Court revisited the standard for summary dismissal of a complaint that fails to state a claim upon which relief may be granted. 556 U.S. 662 (2009). The Court examined the pleading standard under Federal Rule of Civil Procedure 8(a)(2), noting that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 677. However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A complaint must be dismissed for failure to state a claim if it does not state a plausible claim for relief. Id. "Determining

12

whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Finally, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002).

**B. ANALYSIS**

Plaintiff has not alleged how his Sixth[7],

---

[7] The Sixth Amendment to the U.S. Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his

13

Ninth[8] or Fourteenth Amendment[9] rights have been violated. Even liberally construing the Complaint, the Court does not find any cognizable claims under the Sixth, Ninth and Fourteenth Amendments. Those claims will be dismissed with prejudice.

### 1.    First Amendment Free Exercise Claim

Plaintiff alleged Defendant Jones refused Plaintiff's request to go to church services on February 21, 2015. These allegations are insufficient to state a claim of violation of the Free Exercise Clause of the First Amendment. See Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) ("The mere assertion of a religious belief does not automatically trigger First Amendment protections.") Plaintiff has not alleged that he had a "seriously held" religious belief that

---

            favor, and to have the Assistance of Counsel
            for his defence.

[8] The Ninth Amendment to the U.S. Constitution provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

[9] "[T]he Fourteenth Amendment only applies to actions of the states and not to the federal government." Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001). Accordingly, the Court will treat Plaintiff's Due Process and Equal Protection claims against federal employees as arising under the Fifth Amendment.

was violated when he was not allowed to attend church services on February 21, 2015. See Daly v. Lappin, 555 F. App'x 161, 164 (3d Cir. 2014) (quoting Africa v. Pennsylvania, 662 F.2d 1025, 1029–30 (3d Cir. 1981)); see also Garraway v. Lappin, 490 F. App'x 440, 443 (3d Cir. 2012) (applying four-factor test of Turner v. Safely, 482 U.S. 78 (1987)). This claim will be dismissed without prejudice because Plaintiff may be able to plead additional facts to state a cognizable claim.

### 2.   First Amendment Retaliation Claims

Plaintiff raised a First Amendment retaliation claim, alleging all defendants conspired to lock him in isolation as retaliation for his written complaints to the warden against correctional officers. (Compl., ECF No. 1 at 2.) "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).

15

> A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials " 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' " and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225) (alteration in original).

Mitchell, 318 F.3d at 530.

Plaintiff alleged that all defendants met in January 2015 and conspired to retaliate against Plaintiff for filing written complaints and civil cases against correctional officers by writing a false disciplinary report against him and by placing him in isolation. According to Plaintiff, the opportunity for defendants to follow through on their conspiracy presented itself on February 21, 2015, when Lieutenant Jones wrote a false disciplinary report.

Writing a false disciplinary report, leading to confinement in isolation, is an adverse action that would deter a person of ordinary firmness from exercising his constitutional rights. Mitchell, 318 F.3d at 530 (false charge of misconduct resulting in disciplinary confinement stated a claim for retaliation under the

First Amendment). However, to allege a constitutional violation, a prisoner must allege facts supporting each individual defendant's personal involvement in the violation. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing") (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d 1988)).

Here, Plaintiff alleged personal involvement by Jones because he wrote the false disciplinary report, and by Bittinger because he ordered that Plaintiff be placed in isolation. Retaliation claims against the remaining defendants regarding the false disciplinary report will be dismissed without prejudice due to lack of allegations regarding their personal involvement.

Plaintiff also alleged that Lieutenants Bittinger and Marchanello instructed Physician Assistant Altieri not to see Plaintiff when he passed out on February 21, 2015, and this was done in retaliation for his lawsuits against Fort Dix staff. Refusal of necessary medical treatment is an adverse action that would deter a person of ordinary firmness from the exercise of his constitutional rights. See Frazier v. Daniels, Civ. Action No. 09-3612, 2010 WL 2040763, at *10 (E.D. Pa. May 20, 2010) (a delay in

medical treatment is a sufficient adverse action to state a retaliation claim). The facts alleged, accepted as true for screening purposes, are also sufficient to state a First Amendment retaliation claim against Defendants Bittinger and Marchanello.

### 3.   Fifth Amendment Due Process Claims

The Court construes Plaintiff's Fourteenth Amendment claims regarding deficiencies in his prison disciplinary proceeding as arising under the Fifth Amendment, because Plaintiff is a federal prisoner. See supra note 5; Bloom v. State of Il., 391 U.S. 194, 195 ("[t]he Fifth and Fourteenth Amendments forbid both the Federal Government and the States from depriving any person of 'life, liberty, or property, without due process of law.'") Plaintiff complained that he did not receive a hearing before he was placed in isolation for a Category 3 write-up. Minimum due process protections that attach to a prison disciplinary proceeding include:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the

> evidence relied on and the reasons for the
> disciplinary action.

*Stanko v. Obama*, 434 F. App'x 63, 66 (3d Cir. 2011) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). "To the extent that regulations exceed what due process requires, a prisoner still is entitled to reversal of a sanction to the extent that he can show actual prejudice to the interests the regulation is designed to protect." *Von Kahl v. Brennan*, 855 F.Supp. 1413, 1421 (M.D. Pa. 1994); *Bullard v. Schism*, 449 F. App'x 232, 235 (3d Cir. 2011) (per curiam) (petitioner could not show that due process was violated by non-compliance with regulation where minimum due process requirements of *Wolff* were met, and inmate did not show prejudice to the rights to be protected by the regulation.)

Plaintiff did not identify the regulation requiring a pre-hearing on a Category 3 write-up, nor did he establish prejudice based on the right such a regulation was intended to protect.[10]

---

[10] Additionally, Plaintiff did not identify any of the regulations that he alleged Defendants violated, nor did he identify the interest any such regulation was designed to protect.

Therefore, the Court will dismiss Plaintiff's procedural due process claims without prejudice.

The Court also construes Plaintiff's claim that defendants violated federal law by seizing his legal papers and other personal items from his locker as a violation of his substantive due process interest in his property. "Deprivation of inmate property by prison officials does not give rise to cognizable due process claim if the prisoner has an adequate post-deprivation state remedy." Crosby v. Piazza, 465 F. App'x 168, 172 (3d Cir. 2012) (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)). The Federal Bureau of Prisons ("BOP") Administrative Remedy Program qualifies as an adequate post-deprivation remedy system. Bowens v. U.S. Dep't of Justice, 415 F. App'x 340, 344 (3d Cir. 2011) (per curiam). Plaintiff did not allege that he could not avail himself of the BOP Administrative Remedy Program to seek return of his property. Therefore, his substantive due process claims will be dismissed without prejudice.

### 4.   Fifth Amendment Equal Protection Claim

Plaintiff alleged racial discrimination by Lieutenant Jones because he wrote Plaintiff a disciplinary report for refusing to

mop, but he did not write a disciplinary report against a black inmate who refused to mop. The Court construes this as an equal protection claim arising under the Fifth Amendment. See Washington v. Davis, 426 U.S. 229, 239 (1976) ("the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups.") Plaintiff has adequately pled an Equal Protection claim at the pleading stage. See Phillips v. County of Allegheny, 515 F.3d 224, 244 (3d Cir. 2008) ("an allegation of an equal protection violation still must contain a claim that a plaintiff has been treated differently from others who are similarly situated.")

### 5.   Eighth Amendment Inadequate Medical Care Claims

To state an inadequate medical care claim under the Eighth Amendment's proscription against cruel and unusual punishment, an inmate must allege facts showing that each defendant's conduct constituted "unnecessary and wanton infliction of pain" or that each defendant was deliberately indifferent to the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A medical need is "serious," in satisfaction of the second prong

21

of the Estelle test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.3d 860 (3d Cir. 1981)).

Plaintiff alleged Defendant Jones refused to get medical attention for Plaintiff when he complained of left-sided chest, neck and arm pain, and headache. These symptoms, particularly for a 66-year-old inmate, so obviously require evaluation that a lay person would recognize the need for medical attention. See Whooten v. Bussanich, 248 F. App'x 324, 326-27 (3d Cir. 2007) (per curiam) (deliberate indifference standard is met where prison officials deny access to a physician capable of evaluating the need for treatment) (citing Monmouth v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987) and Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993)). Thus, Plaintiff stated an Eighth Amendment claim against Jones.

Plaintiff further alleged that he asked Defendants Sanchez, Ferme, Miletto and Lieutenant "John Doe" for medical attention on February 21, 2015, and they refused. The Court will infer from the

Complaint that Plaintiff told these defendants he had high blood pressure, and he was having left-sided chest, neck and arm pain. Therefore, Plaintiff's allegations against these defendants are also sufficient to state an Eighth Amendment claim for deliberate indifference.

Plaintiff alleged Lieutenants Bittinger and Marchanello instructed Physician Assistant Altieri not to see Plaintiff, and this was part of the scheme to retaliate against Plaintiff for filing lawsuits and complaints against staff. Inferring from the allegations in the Complaint that Bittinger and Marchanello were aware of Plaintiff's symptoms of chest and arm pain, and his later episode of passing out on February 21, 2015, Plaintiff has sufficiently pled a claim of deliberate indifference to his serious medical needs against Marchanello and Bittinger.

Plaintiff also alleged Physician Assistant Altieri refused to check him, and said there was nothing wrong with him. (Id.) Inferring from the Complaint that Bittinger and Marchanello told Altieri about Plaintiff's claimed symptoms, and that Altieri then refused to check Plaintiff because Bittinger and Marchanello told him not to, Plaintiff has sufficiently stated a deliberate indifference claim against Altieri.

23

Plaintiff alleged Lieutenant Lampey violated his Eighth Amendment rights when Plaintiff passed out in his cell on February 21, 2015, and Lampey left him lying there without calling for medical attention. Passing out on the floor more than briefly is a condition obvious to a lay person as requiring medical attention. The allegations are sufficient to state an Eighth Amendment claim against Defendant Lampey.

**IV.   CONCLUSION**

For the reasons described above, in the accompanying Order the Court will grant Plaintiff's IFP application, despite his three strikes under 28 U.S.C. § 1915(g). If Defendants challenge Plaintiff's allegation that, when he filed the complaint on April 14, 2015, he was in imminent danger of serious physical injury, they shall file a response in support of such challenge, as described above. The Court will then set a hearing date, to be held by videoconference, regarding the credibility of Plaintiff's allegation of imminent danger pursuant to 28 U.S.C. § 1915(g).

Alternatively, if Defendants do not challenge Plaintiff's allegation of imminent danger, they shall so notify the Court within ten days, and the Court will set a deadline for filing a

Answer to the Complaint, pursuant to Federal Rule of Civil Procedure 12(a)(1). The claims against Defendants Koeppen and will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A, for failure to state a claim upon which relief may be granted.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE